In re the ESTATE OF Edra PITTMAN.

No. WD 56987.

Missouri Court of Appeals,
Western District.

Feb. 22, 2000.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 28, 2000.

Application for Transfer Denied
May 30, 2000.

Gardiner Blaine Davis, Kansas City, for Appellant.

Stephen Nordyke, Butler, for Respondent.

PAUL M. SPINDEN, Presiding Judge.

Gerald Pittman appeals the circuit court's judgment removing him as guardian of his mother, Edra Pittman, and conservator of her estate. The circuit court acted on a petition filed by Edra Pittman, and Gerald Pittman argues that the circuit court erred because Edra Pittman's petition did not state any statutory grounds for relief. He also alleges that the circuit court based its judgment on issues not stated in the petition and that this amounted to trial of the issues without proper notice. We affirm the circuit court's judgment.

The circuit court appointed Gerald Pittman as his mother's guardian and conservator of her estate in 1984. Edra Pittman asked the circuit court to remove her son and to appoint in his stead Susan Pittman, her son's former wife. The circuit court granted her request to remove Gerald Pittman from the positions. It appointed Susan Pittman as conservator of Edra Pittman's estate and June Cumpton, Bates County public administrator, as Edra Pitt-

man's guardian.[1] Gerald Pittman's appeal asserts that the circuit court erred because Edra Pittman's motion did not allege, and the evidence did not support, any statutory ground for removal.

■ Although Gerald Pittman did not raise the issue of the sufficiency of the pleadings at trial, we consider his argument because a pleading that does not state a cause of action deprives the circuit court of subject matter jurisdiction. *Landvatter Ready Mix, Inc. v. Buckey*, 963 S.W.2d 298, 303 (Mo.App.1997). Gerald Pittman mistakenly argues that the only statutory ground for allowing a ward to request removal of a court-appointed guardian is § 475.110.[2] Section 475.110 also incorporates the grounds for removal of a personal representative listed in § 473.140 and applies them to removal of a guardian or conservator.

Section 473.140 says:

If any personal representative ... fails to discharge his official duties, or wastes or mismanages the estate, ... the court, upon its own motion, or upon complaint in writing made by *any person interested* supported by affidavit, after notice to the personal representative, ... shall hear the matter and may revoke the letters granted.[3]

Section 472.010 defines "interested person" in probate cases as including "others having a property right or claim against the estate." It also says, "This meaning may vary at different stages and different parts of a proceeding and must be determined according to the particular purpose and matter involved."

■ Edra Pittman certainly was an "interested person" in the management of her estate. She, therefore, had authority pursuant to § 475.110 to petition the circuit court for her son's removal as her guardian and conservator of her estate.

Moreover, § 475.082.5 specifically authorizes the circuit court to act on Edra Pittman's petition. It says:

If it appears to the court as part of its review or at any time upon motion of any interested person, including the ward or protectee or some person on his behalf, that the guardian or conservator is not discharging his responsibilities and duties as required by this chapter or has not acted in the best interests of his ward or protectee, the court may order that a hearing be held and direct that the guardian or conservator appear before the court.

■ Although Edra Pittman's motion did not aver the statutory basis for her seeking to remove her son as her guardian and conservator of her estate, the circuit court did not err in removing Gerald Pittman. "Probate pleadings are not to be judged by the strict rules of pleadings applied to a petition in the circuit court. If the pleadings give reasonable notice of the nature and extent of the claim[,] strict rules of pleadings ... are not required." *Estate of McCormack v. McCormack*, 676 S.W.2d 928, 930 (Mo.App.1984).

■ Edra Pittman stated twice in her motion that she wanted to remove Gerald Pittman as her guardian and conservator of her estate. Other contentions referred to her improved "capacity to care for her person and her ability to manage her financial resources." These statements taken with the request to replace Gerald Pittman with Susan Pittman as guardian and conservator reasonably gave Gerald Pittman notice of the nature and extent of the claim.

1. The circuit court explained that, because Susan Pittman lived in St. Louis, Edra Pittman's needs would be "better served by a guardian who is nearby and who is able to personally know and observe the needs of the ward."

2. All citations of statutes refer to the 1994 Revised Statutes.

3. We added the emphasis.

■ The summary nature of probate pleadings "is purposely so framed that parties can attend to their own business in ordinary matters, and the decisions should be so rendered as to subserve the ends of justice according to the evidence." *Guthrie v. Fields*, 299 S.W. 141, 143 (Mo.App. 1927). Lenience in probate pleadings also results from the early practice of appointing probate judges who were not lawyers. *Murphy v. Pfeifer*, 105 S.W.2d 39, 41 (Mo. App.1937). After the Court Reform and Revision Act of 1979, probate courts became a division of circuit court. Because it was then vested with general equity jurisdiction, the probate division could remove a guardian on non-statutory grounds. 5B JOHN A. BORRON, JR., MISSOURI PRACTICE: PROBATE LAW AND PRACTICE § 1982 (2d ed.1992).

This court's recent decision *In re Estate of Vester*, 4 S.W.3d 575 (Mo.App.1999), is distinguishable. The petition in that case advised the conservator and personal representative that a creditor requested her removal as *personal representative*, but the circuit court, on its own motion, proceeded to remove her as conservator. *In re Boeving's Estate*, 388 S.W.2d 40 (Mo. App.1965), which holds that pleadings must allege specific statutory grounds, was another instance when the circuit court, *ex mero motu*, initiated the removal of a guardian or conservator.

■ Gerald Pittman had notice from Edra Pittman's petition titled "Motion for Order Changing the Person Designate as Guardian and Conservator" and from the circuit court's notice of hearing issued on October 29, 1998 that she wanted him removed as her guardian *and* conservator of her estate. Gerald Pittman does not dispute that Edra Pittman sought to remove him as both guardian and conservator of her estate; he argues that the notice he received was not detailed enough.

■ The notice required when a ward or protectee brings a motion to terminate or to remove a guardian is a copy of the petition and notice of hearing. Section 475.083.6; BORRON, *supra*. Gerald Pittman received such notice. He appeared at the appointed time, presented three witnesses, and never objected to the scope of the proceedings or requested clarification of the grounds for Edra Pittman's motion. "However defective the [petition], the court has jurisdiction to judge and determine. If the one cited and served appears, he submits himself to the court and has the right to make his defense and to appeal." *In re Ford*, 157 Mo.App. 141, 137 S.W. 32, 36 (Mo.App.1911).

■ Even if the circuit court erred in entertaining Edra Pittman's motion, we discern no prejudice. Gerald Pittman does not explain how he would have changed his argument or evidence had he been informed of the specific statutory grounds justifying his removal. Only prejudicial error is reversible error. *Krienke v. Lohman*, 963 S.W.2d 11, 12 (Mo.App.1998).

■ Contrary to Gerald Pittman's contention, the circuit court did not base its removal on grounds not enumerated by statute. The circuit court concluded that appointing Susan Pittman as conservator was in Edra Pittman's best interest. It cited Gerald Pittman's infrequent visits with his mother, his unilateral decision to remove a telephone from his mother's room, and his not providing annual settlements and status reports "as should have been provided over a period of years." These factors were sufficient to support the circuit court's conclusion that continued guardianship by Gerald Pittman was not in Edra Pittman's best interest, which is a reason for removal under § 475.082.5.

Gerald Pittman contends that, because the circuit court approved his submitting federal income tax returns as annual settlements, it was estopped from using that as a basis for removing him. He cites *State ex rel. McWilliams v. Armstrong*, 320 Mo. 1122, 9 S.W.2d 600 (Mo. banc 1928), for support. *Armstrong* is distinguishable. In that case, the estate had

been completely exhausted, leaving the conservator nothing to account for in an annual settlement. Edra Pittman's estate was never worth less than $333,558.72, its value when Gerald Pittman became guardian and conservator.

Section 473.543, RSMo Supp.1999, lists the required contents of an annual settlement. Among the essential items are "the exact amount of principal and interest collected on each claim, and also the amount and date of each expenditure or distribution, and to whom and for what paid." Submitting only a federal income tax return as an annual settlement does not satisfy the requirements of an annual settlement, primarily because the purposes of income tax returns and annual settlements are different. A tax return is a report of taxable income. An annual settlement is a tool that the circuit court uses to monitor the estate's earnings and expenditures, and, consequently, the guardian's performance. It was improper for Gerald Pittman to rely on the court's acceptance of the returns as a discharge of his duties as guardian and conservator. In addition, the record does not show any financial information filed with the circuit court for 1985, and the record contains no court orders accepting the returns filed in 1989 for the years 1986–1988 or in 1997.

Gerald Pittman's testimony exhibited some confusion concerning his precise reporting duties as guardian and conservator. He complained that no one informed him of his legal duties, but this did not relieve him of those duties. "This is not want of 'knowledge of a fact' but a self-professed lack of understanding of the law's requirement, which could have been ascertained from a reading of the statutes and pertinent cases. Persons are conclusively presumed to know the law." *Missouri Highway and Transportation Commission v. Myers,* 785 S.W.2d 70, 75 (Mo. banc 1990). Taken alone, Pittman's failure to file proper annual settlements provided adequate grounds for removing him as

guardian and conservator under §§ 473.543 and 473.140.

The other reasons the circuit court cited also support the conclusion that removing Gerald Pittman as guardian was in Edra Pittman's best interests. Section 475.082 instructs a guardian to file an annual report concerning the ward's "personal status." The statute directs the guardian to include, among other facts, the number of times the guardian has had contact with the ward, the date the guardian last saw the ward, and "any major changes in the physical or mental condition of the ward observed by the guardian." That the General Assembly created such specific requirements indicates that personal contact between guardian and ward is important in the circuit court's evaluation of a guardianship. A lack of personal observations limits a guardian's ability to determine a ward's condition. In addition, a guardian's failing to submit annual status reports to the circuit court, as apparently occurred in this case, can contribute to the circuit court's finding that the guardian is neglecting his responsibilities and duties as established by § 475.082.

Gerald Pittman argues that the circuit court's finding that "[t]he relationship between the ward and the guardian is not close" created an improper requirement of congeniality. Although we have ruled, in *In the Estate of Webster,* 920 S.W.2d 600, 605 (Mo.App.1996), that a hostile relationship between guardian and ward does not warrant removal of the guardian, Gerald Pittman's nearly complete lack of a relationship with his mother was significant. The circuit court was justified in giving some weight to Gerald Pittman's unilateral decision to remove his mother's private telephone from her room. The record suggests that their relationship deteriorated to the point that their only interaction occurred when Edra Pittman called her son collect to ask him to send her money.

Edra Pittman's evidence established a statutory basis for removing Gerald Pitt-

man as guardian and conservator. The circuit court based its conclusion on sufficient evidence. We affirm the circuit court's judgment.

HAROLD L. LOWENSTEIN, Judge, and ROBERT G. ULRICH, Judge, concur.