## CHARLES H. SMITH, Appellant, v. WILLIAM R. YOUNG, Curator, Respondent.

St. Louis Court of Appeals, November 4, 1913,

1. GUARDIAN AND WARD: Removal of Curator: Sufficiency of Bond: Executors and Administrators. In an action to remove a curator, a charge that the curator, as administrator of the estate of his ward's deceased father, and also as curator, failed to give a proper bond, as required by statute, in that the sureties thereon were attorneys, was purely technical, and not well taken, since the bond was not invalidated, but remained in full force and effect.

2. ————: ————: Conduct as Administrator of Estate of Ward's Father: Executors and Administrators. In an action to remove a curator, a charge that the curator, as administrator of the estate of his ward's deceased father, improperly took credit for fees and expenses of an attorney in making a trip to another State, *held*, under the evidence, to be not well taken, since the disbursements were made in the interest of the estate.

3. ————: ————: ————: ————. In an action to remove a curator, one of the charges was, that the curator, as administrator of the estate of his ward's deceased father, improperly

waived notice in writing on a claim predicated upon notes which decedent had endorsed, and failed to make any defense thereto, and upon foreclosure of a deed of trust given to secure the notes, bid in the property and improperly took title thereto in his own name, and improperly bid in the land for the amount of the indebtedness, when his bid should have been confined to a nominal amount. *Held*, that the administrator was not guilty of misconduct in failing to defend the claim predicated upon the notes, since the estate was liable therefor, especially in view of the fact that there was evidence tending to show that the maker, who was primarily liable, was insolvent. *Held, further*, that the administrator was not guilty of misconduct in taking title in his own name, in view of the fact that he reported to the probate court that he held the title as trustee for the estate and that his action in so taking title was done under advice of counsel and with the approval of the court. *Held, further*, that the administrator was not guilty of misconduct in bidding the amount of indebtedness for the land, since the law of the State in which the land was situated permitted a redemption by the mortgagor upon payment of the amount of the bid.

4. ———: ———: ———: ———. In an action to remove a curator, a charge that the curator, as administrator of the estate of his ward's deceased father, neglected to collect a note due the estate, and improperly took credit for it as uncollectible in his final settlement, *held*, under the evidence, to be not well founded; the probate court having permitted the credit, as it was authorized to do by Sec. 240, R. S. 1909.

5. EXECUTORS AND ADMINISTRATORS: Allowance of Credit for Uncollectible Debt. Under Sec. 240, R. S. 1909, the probate court may allow an administrator to take credit for debts which it is convinced are uncollectible.

6. GUARDIAN AND WARD: Removal of Curator: Conduct as Administrator of Estate of Ward's Father: Executors and Administrators. Where an administrator was appointed curator of the estate of decedent's minor daughter, it was no ground for his removal as curator that, in making his final settlement as administrator, he failed to publish or serve notice of distribution and to request the appointment of a guardian *ad litem* or other person to represent the minor, who was the sole distributee, but made final settlement as administrator with himself as curator, where there was no showing that he was actuated by improper motives or that he failed to account for any of the property.

7. ———: ———: Failure to Inventory Property. The probate court, in its discretion, may refuse to remove a curator

for failure to make a true inventory of the estate of his ward, as required by Secs. 425, 427, R. S. 1909, where it appears that the estate had been fully inventoried shortly before by a former curator and that defendant curator accounted for all of the property thus inventoried.

8. ———: ———: **Failure to Loan Money.** In an action to remove a curator, a charge that the curator failed to loan the money of his ward on prime real estate securities, as required by Sec. 444, R. S. 1909, *held* not sustained by the evidence.

9. ———: ———: **Failure to Report Disposition of Moneys.** Where it was shown that a curator had not wasted his ward's estate, and was not guilty of mismanagement, but, instead, that the estate had increased in his hands, *held* that the exercise by the probate court of the discretion given it by Sec. 444, R. S. 1909, in refusing to remove the curator for failure to make reports as to moneys of his ward on hand, in accordance with that statute, would not be disturbed, on appeal.

10. ———: ———: **Discretion of Probate Court and Circuit Court.** Probate courts are allowed a liberal discretion in respect to the removal of curators, and their decisions will not be reversed, on appeal, unless palpable injustice has been done; and the same rule applies to the circuit court when the proceeding is certified to that court, pursuant to Sec, 4063, R. S. 1909, because the probate judge is a material witness.

Appeal from Lincoln Circuit Court.—*Hon. James D. Barnett,* Judge.

AFFIRMED.

*Jones, Hocker, Hawes & Angert* and *J. Lionberger Davis* for appellant.

(1) The court erred in not ordering the removal of defendant from the curatorship of the estate. Mismanagement of the estate of the father of which defendant was administrator can be shown in connection with similar mismanagement of the estate of the child of which he is curator. In re Wood, 71 Mo. 623. (2) Probate courts are of statutory creation and administrators and curators have no powers except those conferred by statute. Sec. 4067, R. S. 1909; Elliotts' Es-

tate v. Wilson, 27 Mo. App. 218. (3) Defendant should have followed the statutory requirements in administering the estates herein involved. He failed to make an inventory as required by Sec. 425, R. S. 1909. (4) He failed to loan the ward's money on prime real estate security and report such loans as required by Sec. 444, R. S. 1909. (5) He purchased land without authority of law. (6) He failed to properly account for funds of the estate—his settlements and statements being uncertain and unintelligible.

*R. H. Norton* and *Avery & Killam* for respondent.

We take it that there can be no dispute as to the legal obligations of a curator in the care and management of his ward's estate, and that the authorities require of him that measure and prudence that a prudent and diligent man would exercise in the management of his own business. Taylor v. Kellogg, 103 Mo. App. 258; Finley v. Schlueter, 54 Mo. App. 455; Reynolds Appeal, 70 Mo. App. 576; In re Bowies Estate, 74 Mo. App. 191. We readily concur with the view of the Supreme Court of Missouri in the case of "In Re Wood" 71 Mo. 623, and we desire to say that Mr. Young, the curator of the minor and the administrator of the father of the minor, wishes to comply in his administration of these two estates with not only the letter but the spirit of the law, as expressed therein.

ALLEN, J.—This is an appeal from the judgment of the circuit court of Lincoln county, in a proceeding instituted for the purpose of removing the respondent as curator of the estate of one Etta Louise Jackson, a minor under the age of fourteen years. The proceeding was begun in the probate court of said county by the appellant, the grandfather of said minor, and who, it seems, had adopted her. In his petition filed herein, the appellant made affidavit that the judge of said probate court was a material witness, and for

this reason the cause was certified to the circuit court in accordance with the provisions of section 4063, Revised Statutes 1909. The judgment of the circuit court was in favor of the curator, and the petitioner appeals.

In 1904 William A. Jackson, the father of Etta Louise Jackson, died testate. Letters testamentary upon his estate were granted to James A. Jackson, who was also appointed curator of the estate of said Etta Louise Jackson, the minor child of William A. Jackson; the mother of said minor having died previously. On December 31, 1904, said James A. Jackson, as executor, filed his inventory of the Wm. A. Jackson estate, and also his inventory, as curator of the estate of the said minor child. On January 20, 1905, James A. Jackson died; and on February 19, 1905, the respondent, William R. Young, then the public administrator of Lincoln county, was by the probate court of said county placed in charge of the estate of said Wm. A. Jackson, deceased, and was on February 23, 1905 also appointed curator of the estate of said minor.

Respondent administered upon the father's estate, and filed his final settlement thereof, which was approved on February 4, 1909, and the respondent was ordered to distribute the balance in his hands, to-wit, $4681.72, to the said Etta Louise Jackson, the sole distributee. This balance was receipted for by the respondent as curator of the estate of said minor, and respondent was thereupon discharged as such administrator.

It is now sought to remove respondent as curator, upon the ground, as is alleged, that he is "incapable and unsuitable to execute the trust reposed in him and has failed to discharge his official duties as administrator of the estate of said Wm. A. Jackson and as curator of the estate of said Etta Louise Jackson, has wasted and mismanaged said estates, and has failed to account for moneys and property which came

into his hands as administrator and curator" in the particulars which appellant alleges in his petition.

The learned circuit judge heard the evidence respecting the various charges against the respondent and found that they were not sustained by the evidence. And the court found, "upon an examination of the curatorship of said minor by said Wm. R. Young, that the property of said minor in his hands as curator and her interests therein have been fully protected, and that the said Wm. R. Young is a capable and suitable person to execute the trust reposed in him by the probate court of Lincoln county, Missouri, appointing him as said curator."

It was thereupon ordered and adjudged by the court that the appellant's petition be dismissed; from which judgment this appeal is prosecuted.

The petition contains fourteen charges against respondent. They pertain to respondent's administration of the father's estate as well as to the curatorship. The petition proceeds in part upon the theory that respondent failed to properly account in his capacity as administrator for money to which his ward was entitled as distributee; that he may be charged therewith as curator (See In Re Wood Estate, 71 Mo. 623); that he is subject to removal therefor; and that his alleged misconduct as administrator shows that he is an unfit person to act as curator. How far he can be here assailed for his acts as administrator, we do not decide, but will consider the charges *seriatim*.

The first charge is that, as administrator of the father's estate, respondent failed to give a proper bond as required by the statute, in that the sureties thereon were attorneys at law. This point is purely technical and not well taken, since in any event the bond is not invalidated but remains in full force and effect. [See State ex rel. v. Findley, 101 Mo. 368, 14 S. W. 111.]

The second charge pertains to a credit alleged to have been improperly taken by respondent in his annual settlement of the father's estate for 1906, for fifty dollars paid for the expenses of a trip of an attorney to Arkansas. The evidence discloses, however, that this was in the interest of the estate and that the allowance therefor was proper.

The third charge is that respondent, in his annual settlement of the father's estate for 1907, improperly took credit for seventy-five dollars attorney's fee paid on account of a trip of his attorney to Arkansas and thirty dollars expenses of said trip. These disbursements were likewise made in the interest of the estate and the allowances are not open to attack.

Th fourth and fifth charges may be considered together. It is charged that respondent, as administrator of the father's estate, improperly waived notice in writing upon three claims against the estate in favor of the estate of James A. Jackson, deceased, failed and neglected to make any defense against said claims, and improperly took credit for and charged the estate with the amount paid out on account thereof. It appears that during the life time of the said Wm. A. Jackson, he and one Dr. Beakley took certain notes of one Dr. Chenault, made payable to them, and which were secured by a deed of trust on certain land in Arkansas. It seems that these notes were afterwards transferred by indorsement to James A. Jackson, the said payees specifically guaranteeing the payment thereof. It appears that the maker defaulted in the payment of these notes, and Dr. Beakley and the estate of Wm. A. Jackson were required to pay them; that a suit was brought in Arkansas to foreclose the mortage, and that the land was sold at public sale, under a judgment of foreclosure, for the payment of the notes. At this sale Dr. Beakley and the respondent bought the land for the sum represented at the time by the indebtedness upon the notes and the cost

of foreclosure. The estate paid its one-half of the total indebtedness represented by the notes, and the respondent, with Dr. Beakley, took title to the land in question, and it appears that the respondent now holds the title to an undivided one-half interest therein, in trust and for the benefit of his ward, Etta Louise Jackson.

Appellant makes the point that respondent had no right or authority to take title to this land and that he should have contested the allowance of these claims against the estate. We are not persuaded, however, that the respondent was guilty of any misconduct in the transaction, or that his acts in the premises would justify his removal as curator; for it appears that the estate was legally liable for one-half of the indebtedness represented by these notes. It is true that the maker thereof was primarily liable; but as bearing upon respondent's good faith, he was permitted to testify that he was informed that the maker was insolvent. At any rate, it appears that he consulted with the probate judge with respect to the matter, prior to taking title to the land, and it would seem that he did what he perceived to be for the best interests of the estate of which he was administrator and of his ward who was the sole distributee thereof. The transaction is assailed because he took title in his own name, but it appears that he acted upon the advice of counsel in Arkansas in so doing, and that he reported the transaction to the probate court and did not profess to hold the title other than as trustee, and that his acts in the premises had the court's approval. It seems that there were no bidders at the sale—though there is evidence that the land was worth the amount of the indebtedness—and that the property would have been sacrificed had it not been bought by respondent and Dr. Beakley. The transaction is further assailed upon the ground that, under the circumstances, if purchased at all, but a nominal bid should have

been made thereon. It appears, however, that this was done because of a provision of the Arkansas law permitting a redemption of the property within a certain time, and that if but a nominal amount had been bid the mortgagor might have redeemed by paying such amount and taking the property.

Regardless of respondent's technical right and authority to take and hold the title to the land in question, it does not appear that his act in doing so in behalf of the estate of the father, under the circumstances, furnishes ground for removing him as curator of the minor's estate. It does not appear that the estate of Wm. A. Jackson could escape its liability on the notes; and it seems that the respondent, in what he did, was simply seeking to protect the interests of his estate and of his ward.

The sixth charge against the respondent pertains to a note of one hundred dollars appearing in the inventory of the Wm. A. Jackson estate. The charge is that the respondent negligently permitted the statute of limitation to run against the same and failed, neglected and refused to make any effort to collect the note, and in his final settlement took credit therefor as being uncollectible. Under the evidence, however, this charge does not appear to be well founded. It appears that the note bore a credit of one hundred dollars, leaving in any event only certain interest due thereon; that at the time of the inventory the note was barred by limitations except for the credit in question; that it was contended that the note had been paid, and that upon investigation respondent was fully satisfied that this was true, and that it would be but a useless expense to undertake to collect it. The probate court must have been convinced of this, for it permitted respondent to take credit for the note as uncollectible, which the court was authorized to do. [See section 240, Revised Statutes 1909.]

The seventh charge against respondent is that he, as administrator of the Wm. A. Jackson estate, failed to publish or serve a notice of distribution, and failed to request the appointment of a guardian *ad litem* or other person to represent the estate of Etta Louise Jackson, the latter being the sole distributee of the father's estate, and undertook to make a final settlement as administrator of the father's estate with himself as curator of the estate of said minor. However this may be, in the absence of a showing that respondent was actuated by improper motives, the omission complained of cannot now well be urged as a ground for removing him. It is not contended that the respondent failed to properly account for anything in his hands as administrator, and it would seem that the charge is now rather technical than substantial, when urged as a ground for removing respondent from his position as curator.

The eighth charge is that the respondent in the estate of Etta Louise Jackson, failed to give a proper bond because one of the sureties thereon was an attorney at law. As to this it is unnecessary to repeat what we said above with respect to the first charge in the petition.

The ninth, tenth, eleventh and twelfth charges against the respondent were abandoned in open court.

The thirteenth charge against the respondent, or so much thereof as need be noticed, is that he, as curator, failed to make a true inventory and appraisement of the estate of his ward. This charge is made upon the ground that the statute required respondent to reinventory the estate when it came into his hands. It appears, however, that shortly prior thereto the estate had been fully inventoried by the former curator, James A. Jackson. The first settlement of respondent accounted for and showed that the property was on hand as inventoried, and while there was not a literal compliance with the direction of the statute,

we think that this would not require that respondent be removed, where the lower court, in the exercise of its discretion, found that he ought not to be removed therefor.

The fourteenth and last charge against respondent is that he as curator failed to loan the money of his ward on prime real estate securities, and failed to make report of the disposition of the money of his ward, as required by section 444, Revised Statutes 1909.

The alleged failure of respondent to loan the ward's money on prime real estate securities pertains to a period when certain moneys were kept on hand for a time, and has to do, in part, with the taking up of certain notes of the father at a bank with certain insurance moneys, as his will directed, which notes were secured by real estate security and other collateral. There is much testimony in the record respecting these matters, which is unnecessary for us to rehearse. It seems that the probate court approved respondent's course of action, and it is sufficient for us to say that a careful examination of the evidence before us does not convince us that the judgment of the trial court should be disturbed on this ground.

Neither do we think that the fact that respondent, in his annual settlement prior to 1910, neglected to specifically make report of the disposition of the moneys of his ward an offense, under the circumstances here appearing, as would call for a reversal of the judgment below. The probate judge testified at the trial that it had been almost a universal practice in that court for such settlements to be filed without making report as to how the funds were invested. That such practice was permitted did not, of course, make it lawful, and respondent is presumed to have known the law; but section 444, supra, makes it discretionary with the probate judge to remove a curator for neglect or refusal to make such report. It appears to

have been mere neglect on the part of respondent; and in 1910 he reported fully the disposition of the funds in his hands, whereby it appeared that they were properly invested, and such appeared to be the case at the date of the trial below. In view of the discretion lodged in the probate court with respect to the removal of a curator for such reason, and that the learned circuit judge below must, under the circumstances, be regarded as invested with that discretion, we feel that the court's finding herein ought not to be disturbed on this ground.

We may say further that it does not appear that the respondent has wasted the estate, or that he can be properly charged with mismanagement thereof. It would appear that both estates increased in his hands and under his management, and it does not appear to be contended that he has been guilty of any act of dishonesty. In certain respects there has not been a literal compliance with the law, but this does not seem to be sufficient, under the circumstances, to justify us in disturbing the finding of the lower court.

The rule is well settled that probate courts are allowed a liberal discretion in respect to such removals and that their decisions will not be reversed on appeal unless palpable injustice has been done. [King v. King, 73 Mo. App. 78.] Here, because of the disqualification of the probate judge, that discretion was lodged in the learned circuit judge who tried the cause below, and to whose findings we should in large measure defer.

We are of the opinion that the judgment below should be affirmed, and it is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.