**I.R. KIRK FARMS, INC., Appellant,**

v.

**W.L. POINTER, Robert K. Sowers, Ralph Storey, Jay Plattner, and Richard K. Schwope, doing business as Investors Land Company, Weston Division, Respondents.**

**No. WD 47910.**

Missouri Court of Appeals,
Western District.

Feb. 15, 1994.

Price A. Sloan, Terrance M. Summers, Kansas City, for appellant.

Albert H. Chamberlain, Kansas City, for respondents.

Before KENNEDY, P.J., and ULRICH and SPINDEN, JJ.

SPINDEN, Judge.

At issue in this appeal is whether the trial court erred in dismissing the lawsuit of I.R. Kirk Farms, Inc., which was seeking specific performance of an option contract to regain title to a large farm in Platte County. We reverse the trial court's judgment and remand the case for further proceedings.

Kirk sued for specific performance and damages on February 2, 1990. Its petition averred:

... Defendants, W.L. Pointer, Robert Sowers, Ralph Storey, Jay Plattner, and Richard Schwope, are partners in a Missouri General Partnership referred to as Investors Land Company, Weston Division, hereinafter collectively referred to as "Investors".

... On or about February 10, 1988, and February 18, 1988, [Kirk] entered into a written contract with Equitable Life Assurance Society of the United States and Investors whereby [Kirk] deeded to Equi-

table all of its right, title and interest in the ... described real property located in Platte County, Missouri[.]

... On or about February 12, 1988, [Kirk] and Investors entered into an Option Agreement and Right of First Refusal whereby Investors extended to [Kirk] an option to purchase the real property described ... upon certain terms and conditions....

... On or about April 12, 1988, a Warranty Deed from Equitable to Investors of the ... property was duly recorded in the Office of the Recorder of Deeds in Platte County, Missouri. At or about the same time, a copy of the ... Option Agreement was also recorded in the Office of the Recorder of Deeds in Platte County, Missouri.

... On or about February 11, 1989, [Kirk] exercised the option and tendered to Investors its check in the sum of $10,-000.00 along with its letter of intent pursuant to said Option Agreement that Investors convey to [Kirk] merchantable fee simple title to the ... property. Investors refused, and still refuses, to sell said property to [Kirk], to accept said sums tendered to Investors by [Kirk], or to execute said deed to the property.

... *[Kirk] performed all of its obligations under the Option Agreement with Investors except those that Investors has prevented [Kirk] from performing, and* [Kirk] is ready, able and willing to purchase said property according to the terms and conditions of the *Option Agreement* as they were at the time [Kirk] exercised said Option in February of 1989.[1]

Attached to Kirk's petition was a copy of the option agreement. Included in its provisions were these:

2. *Deposit.* Concurrently with the execution hereof, [Kirk] will pay to [Investors] the sum of ... $50 ... (the "Deposit") in consideration of [Investors'] grant of the Option and the Right of First Refusal. If [Kirk] fails to exercise any of its rights under either the Option or the Right of First Refusal as herein provided, [Inves-

tors] shall have the right to retain the Deposit, and neither party shall have any rights and remedies hereunder. In the event [Kirk] exercises any of its rights under the Option or the Right of First Refusal, the Deposit shall be applied toward the payment of the purchase price to be paid by [Kirk] as hereinafter provided.

3. *Option.*

3.1 The Option shall have a term of two ... years, commencing on [February 12, 1988,] and ending February 17, 1990, and if not exercised within said ... period, the Option shall lapse, expire and become null and void.

3.2 [Kirk] shall exercise the Option by giving written notice to [Investors] ... at any time on or before February 17, 1990. Upon the exercise of the Option by [Kirk], this Agreement shall immediately operate as a real estate sale contract on the terms hereinafter set forth.

. . . .

3.4 The purchase price for the Property (the "Purchase Price") shall be computed as follows:

. . . .

(b) If the Option is exercised on or prior to February 17, 1990, and after February 17, 1989, then the Purchase Price will be an amount equal to the sum of (i) ... $69,500.00 ... (ii) the total of all interest paid through the Closing Date (as herein defined) by [Investors] on the amount reflected in (i) above, (iii) ... $139,000.00

... and [Investors'] attorney's fees not to exceed ... $3,500[.]

The Purchase Price will be payable as follows: ... $10,000.00 ... payable upon the exercise of the Option which, together with the Option Deposit, shall constitute an earnest money deposit of ... $10,050.00 ... (the "Earnest Money"), and the balance of the Purchase Price shall be paid in cash at Closing as herein provided.

. . . .

14. *Remedies.* If either party hereto shall default in the performance of its covenants and agreements set forth herein,

---

1. We added the emphasis.

the other party shall have all rights and remedies available at law, in equity or under this Agreement, including without limitation the right to obtain specific performance of this Agreement. [Investors] and [Kirk] hereby agree that in the event of any litigation between them, the non-prevailing party shall pay all fees, costs and expenses, specifically including, without limitation, attorneys' fees, expended or incurred by the prevailing party, and court costs, in connection with such litigation.

On April 4, 1990, Investors filed a motion to dismiss in which it alleged:

> ... [Kirk] fails to allege that there was ever any consideration paid by [Kirk] to [Investors] to support [the Option Agreement]. The Option Agreement itself does not recite that any consideration was paid; it merely states what consideration was to be paid. Accordingly, [Kirk] was required to pay the stated consideration prior to Investors becoming bound by the Option Agreement. Likewise, [Kirk] must plead the payment of consideration to state a cause of action herein, but that was not done. This failure is due to the fact that no such consideration was ever paid.

The trial court overruled the motion on November 13, 1990, but it set aside that order the same day. The trial court took up the motion again on February 11, 1991, and overruled it on February 27, 1991. Then, on April 30, 1993, the trial court, "on its own motion," reconsidered the motion to dismiss and sustained it.

 In this appeal, Kirk argues that the trial court erred in that (1) the option was supported by valid consideration and (2) Kirk accepted the option before Investors withdrew it. We reverse the trial court's dismissal because, taking all of the facts pleaded to be true, Kirk's petition states a cause of action.[2]

 When we review a trial court's granting of a motion to dismiss, we must allow the pleadings their broadest intendment, treat all alleged facts as true, and construe the allegations favorably to the plaintiff. *Shapiro,* 576 S.W.2d at 312. Because the trial court did not specify its reason for sustaining Investors' motion to dismiss, we assume that it dismissed the case for one of the reasons stated in Investors' motion, and we "must affirm the trial court's dismissal if any ground asserted in defendant's motion is valid." *Major Lumber Company v. G & B Remodeling, Inc.,* 817 S.W.2d 474, 476 (Mo.App.1991).

 Kirk's petition averred that it "performed all of its obligations under the Option Agreement with Investors except those that Investors ... prevented [Kirk] from performing[.]" This was sufficient for the petition to withstand Investors' motion to dismiss. *Irwin v. Bertelsmeyer,* 730 S.W.2d 302, 303 (Mo.App.1987). Rule 55.16 says, "In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred."

Kirk's pleading was sufficient to state a cause of action. The trial court erred in sustaining Investors' motion to dismiss. We reverse the trial court's judgment and remand the case for further proceedings.

All concur.

---

2. Both parties urge us to address the merits of this case by asking us to test the adequacy of consideration supporting the Option Agreement. We feel constrained from addressing the merits. The only appropriate issue on appeal of a granting of a motion to dismiss is whether the pleadings state a cause of action. *Shapiro v. Columbia Union Nat'l Bank & Trust Co.,* 576 S.W.2d 310, 315, n. 6 (Mo.1978), cert. denied, 444 U.S. 831, 100 S.Ct. 60, 62 L.Ed.2d 40 (1979). The trial court could have treated the motion to dismiss as a motion for summary judgment pursuant to Rule 55.27(a) and considered matters outside the pleadings. However, to do so, the trial court had to give the parties notice and the opportunity to present all material pertinent to a motion for summary judgment. *State ex rel. Mo. Highway and Transp. Comm'n v. London,* 824 S.W.2d 55, 58 (Mo.App.1991). There is no indication in the record that the trial court gave such notice or treated this as a motion for summary judgment; hence, we are confined to the pleadings.